## AFFIDAVIT OF MR. SAMUEL SANTOS ORTIZ

MR. SAMUEL SANTOS ORTIZ, FIRST BEING DULY SWORN, HEREBY ATTEST TO THE FOLLOWING:

1). I, Samuel S. Ortiz, (hereinafter the affiant), provide this statement freely and voluntarily under penalty of perjury.

2). I accepted an arrangement of 30 years in case 01-623(JAG). At that time the office of the District Attorney argued that there had been a conspiracy where they placed me as the leader. For said case, judge Garcia-Gregory of the Federal Court did not respect the agreement and condemned me to life in prison.

3). The affiant learned later that Elio had made some statements where he mentioned me. Weeks later I found out that he was in prison and then he was out on bond. The affiant hear nothing more about him.

4). While serving my sentence, I discovered that Elio was cooperating with Federal authorities to reduce his sentence. Consequently, Elio involved people that had nothing to do with the acts for which I was accused.

5). The affiant was not aware that Elio had testified to so many lies which placed innocent people in prison.

6). The affiant was shocked to learn that Elio involved Omar Rodriquez-Rivera in the theft of the Coors truck and the theft of Guayama Marble. Omar had nothing to do with said acts. In fact, Omar is distinquished for being a hardworking fellow. He is not known to have any vices.

7). Mr. Omar Rodriquez-Rivera has never planned or organized a crime of any kind with the affiant. No one has given me anything in exchange for these statements.

8). The foregoing is true and accurate to the best of affiant's recollection.

_____
Samuel Santos Ortiz (Affiant)

Sworn and subscribed to before me, a Notary Public, in and for the County of _____, Georgia, on this _____ day of September.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES ON: August 28, 2015

## AFFIDAVIT OF OMAR RODRIQUEZ-RIVERA

MR. OMAR RODRIGUEZ-RIVERA, FIRST BEING DULY SWORN, HEREBY ASSERTS THE FOLLOWING:

1). I Omar Rodriguez-Rivera, (hereinafter the affiant), is movant in the matter currently before the Court. The affiant does not speak English well and therefore, is proceeding with assistance by one acting as a translator.

2) Court Appointed attorney, Jorge L. Armentero-Cheveroni, (hereinafter counsel), represented the affiant at trial and on direct appeal. He also mislead the affiant to believe that he will represent the affiant in this post-conviction motion.

3). The affiant was subsequently tried in the Court for the Commonwealth of Puerto Rico for the same offense for which he was convicted in the United States District Court of Puerto Rico.

4). Elin Guillermo Lugo-Echevarria, (hereinafter Lugo), was a key witness whom testified in both jury trials against the affiant. In the federal trial, Lugo claimed to be present in affiant's house when Samuel Santos Ortiz returned a gun used in the charged offense. In the subsequent trial, Lugo admitted that he did not know where exactly the affiant or his mother resided and that he never been inside their residents.

5). Defense counsel recently obtained possession of the taped recordings of the trial conducted in the Court for the Commonwealth of Puerto Rico. The delay thus far is due to counsel's random efforts to get those records transcribed free of cost albeit he did not represent the affiant in the trial that resulted in the jury acquitting the affiant of all charges.

6). The affiant received permission from the Warden, John T. Rathman, to receive the taped recordings so that the affiant can have them trancribed (the relevant part), in English with assistance from others in here.

7). The affiant asserts that he told counsel to interview and call Samuel Santos Ortiz as a defense witness. Ortiz's affidavit is also presented herewith.

8). Counsel did not discuss the affiant's right to testify in his own defense, Had he been informed, the affiant would have

testified in the federal trial. The affiant did not have any prior conviction then that would have affected his credibility.

8) The affiant was such a good employee that, after only a month, he was trusted with opening the Bakery every morning and hewas exposed to the complete operation and procedure that resulted in the deposit of approximately $40,000 monthly. The Bakery cashed checks too.

9). At the time of the offense, The Narbel Cafe and Bar did not openly advertised that they also cashed checks. Like the Bakery, Narbel Cafe & Bar was not licensed nor authorized to operate a check cashing business. This fact was noted in the trial wherein the affiant was acquitted.

10). The foregoing is true and correct to the best of affiant's recollection.

                                                          _____
                                                          Omar Rodriquez-Rivera
                                                             (affiant)

Sworn and subscribed to before me, a Notary Public, in and for the County of _____, _Alabama_, on this _____day of May 2012

                                                         _____
                                                           NOTARY PUBLIC

MY COMMISSION EXPIRES:_____

Authorized by the Act of July 7, 1955, as amended, to administer oaths (18 U.S.C. § 4004).

# STATEMENT UNDER PENALTY OF PERJURY

**COMES NOW** Mr. Jorge Luis Armenteros-Chervoni, Esq., and respectfully states under penalty of perjury the following:

1) I was the lawyer during the initial trial of Mr. Omar Rodríguez Rivera in Federal Court. The case was lead by Federal Judge Carmen Consuelo de Cerezo.

2) This was my second full trial in federal court. Nevertheless, this was the first trial I saw on my own.

3) As I ponder in retrospect some of the things I did which contributed to Mr. Rodriguez Rivera's conviction is the fact that I never officially cited Mr. Samuel Santos which was the third person who allegedly conspired with my client to make the corresponding assault.

4) Mr. Samuel Santos is serving a life sentence precisely for these same facts.

5) After the conviction, we met Mr. Samuel Santos because he was being processed in state court and he reaffirmed his willingness to testify about Mr. Rodríguez Rivera's lack of involvement in the conspiracy.

6) Mr. Rodríguez Rivera informed me of that possibility. However, when I asked the Court to bring Mr. Samuel Santos to testify, Judge Cerezo informed me that I needed to do that according to procedure, denying in fact, Mr. Samuel Santos presence in Court. We obviated the citation of Mr. Samuel Santos, although we were instructed specifically to cite this person.

7) We believed that we could acquit Mr. Rodriguez Rivera without the presence of Mr. Samuel Santos and the result was a 40 year conviction.

We state the above aware of the consequences that this statement might have against our professional interests, but nevertheless we sign it because is the truth under oath or penalty of perjury.

Jorge Luis Armenteros-Chervoni, Esq.